[Thornton et al. *v.* The Western Reserve Farmers' Insurance Co.]

a result in *Gray's Estate, supra.* There was nothing in the general charge to redeem the error in this particular.

As to that portion of the money received after the Act of 1848, it stood upon a different footing. The receipt of it by the husband rested upon an opposite presumption. As the law made it hers, it presumed it to have been received for her. So full was her right and dominion over it, that she might have loaned it to her husband, and his estate would have had to repay it. This being so, her power was equal to a direction to him to appropriate it for her benefit and comfort, which, if done, would bind her. So here, if she gave him direction to dispose of, or expend it in a particular manner, for her benefit, and the comfort of her family, and it was so done, she would have no legal or equitable right to come upon her husband's estate for it. The law upon *that* part of the case was in the general charge correctly given to the jury, viz : " that if the money," received after the Act of 1848, " was appropriated to the fitting up of a house, at her particular request, for her own comfort and that of her family, she cannot now recover it." But this accurate view of the case was lost sight of in the answer to the point put by the jury. For, without any reference to it the court affirmed the proposition " that if the wife did allow the money to be appropriated to fitting up the house, that his agreement afterwards to pay it would be binding upon his estate," saying, " that if such a promise or declaration of intention was made, there was a sufficient consideration to support it." Had such a promise or declaration to repay been made at the time of expenditure, this might have been all right, for then the transaction might have been treated as a loan ; but it is difficult to discover any consideration for a subsequent promise to repay it, made after an expenditure of it at the request of the wife, for her comfort and benefit. On that point, that it had been so expended, assumed in the question of the jury, they should have been instructed that there was no consideration for it. To hold the estate answerable upon a mere declaration of intention to pay, as the charge assumed might be done, would lead to innumerable and gross frauds upon creditors and heirs.

Judgment reversed, and *venire facias de novo* awarded.

# Thornton *et al. versus* The Western Reserve Farmers' Insurance Company.

1. The Act of 10th March, 1810, relative to foreign insurance companies, does not apply to companies chartered by other States of this Union.

2. The Act of 13th April, 1827, relative to insurance companies chartered by other States, relates only to agents for making and renewing contracts of insurance, and not to agents for receiving applications.

3. The Act of 24th January, 1849, applies to branch agency offices established in this State, by companies of other States, and not to mere transient or travelling agents to solicit applications to be sent to the company.

4. In suits by foreign insurance companies, to recover assessments on their premium notes, it is not necessary to follow the forms of remedy prescribed by their act of incorporation.

ERROR to the Court of Common Pleas of *Erie county.*

The plaintiff in error was defendant below.

The plaintiff below is an insurance company, chartered by and under the laws of the State of Ohio, located and doing business at Painesville, in the county of Lake, in said State. C. S. French was employed by the company as its agent to travel, solicit, and take applications for insurance of property to be insured, in the State of Ohio, and in Erie county, Pennsylvania, in the summer and fall of 1850. In pursuance of such agency, he applied to the defendants below, at Fairview, Erie county, Pennsylvania, on the 16th day of September, 1850, and for said company proposed to insure their woollen factory at Fairview, in said company, which resulted in a contract of insurance on the part of the company, for the premium of which defendants below paid some money, and gave the note upon which this suit was brought for the remainder. The note bears date at " Painesville, Ohio ;" but the contract was made, and the note made and delivered at Fairview, Erie county, Pennsylvania, to French, as agent for the company.

This suit is brought to recover two assessments on said note for alleged losses: one made August 13, 1853, and one made October 7, 1854—amounting to $68, upon which interest was claimed. No losses were proved.

Plaintiffs filed no declaration ; but filed the following statement, upon which they went to trial, with the plea of *non assumpsit and payment :*

"And now, to wit, October 26, 1857, plaintiffs, by their attorneys, come and state that their cause of action arose in the following manner :

" The plaintiffs are a legally incorporated mutual insurance company in the State of Ohio. That on, or about, the 16th day of September, A. D. 1850, defendants had a certain woollen factory belonging to them, and situate in Fairview township, Erie county, Pennsylvania, insured in the above-named insurance company, and, in consideration of the said plaintiffs insuring the said factory, the said defendants signed and gave the said company a certain promissory or premium note, on which this suit is brought, and of which the following is an exact copy:

" 'The secretary is authorized to number and date this note.

" 'No. 39.　　　　　PAINESVILLE, Ohio, Sept. 16, 1850.

" 'For value received in policy, of the same number and date,

herewith issued by the Western Reserve Farmers' Insurance Company, we promise to pay the said company the sum of two hundred dollars, in such portions and at such times as the directors of said company may, agreeably to their act of incorporation, require.          THORNTON & CO., Applicants,
          WILLIAM THORNTON, Surety.'
" That afterwards, owing to losses by fire, it became necessary to make assessments on the premium notes of the members of the above-named insurance company. Two different assessments have been made on the above note : one of thirty-two dollars, with interest from October 10, 1853, and one other assessment of thirty-six dollars, with interest from November 20, 1854; the payment of which said assessments the defendants have wholly refused, though duly notified thereof. The plaintiff thereof claims the amount of the above assessments with interest and costs of suit."

On the trial, the note, and Act of the General Assembly of Ohio, incorporating said company, passed March 22, 1849, and another Act amending the former, passed February 18, 1850, were read.

Plaintiffs then proved the making of the assessments claimed, and the giving of notice, and rested.

Defendants then read the deposition of C. S. French, who proved that he was the agent of the company in 1850, in Ohio, and Erie county, Pennsylvania ; that he procured this insurance ; that the insurance was made and note given at Fairview, Erie county, Pennsylvania; and that the company did business at Painesville, Lake county, Ohio, and rested.

Defendants' attorney then requested the court to charge the jury as follows:

1. " That the plaintiff is a corporation created by the laws of the State of Ohio, and is a foreign insurance company, having no right to make contracts of insurance in Pennsylvania, nor to insure property situated therein, and the contract of insurance, for the premium of which the note upon which this suit was brought was given, having been made by the company by its agent in Pennsylvania, to insure property in Pennsylvania, the contract is prohibited by law, the note void, and the verdict must be for defendant.

2. " That the plaintiff, if not a foreign insurance company under the Act of 1810, is an insurance company created and acting under the laws of the State of Ohio, and has no legal right to make contracts of insurance in Pennsylvania, or upon property therein situated without first having complied with her laws relative to leaving with the treasurer of the Commonwealth a copy of its charter, and the agent filing a copy of his appointment, procuring a license, publishing notice, paying per centage

on premiums, and doing all other acts or things required by the laws to be done, and the burden of proving this lies upon the party seeking to recover, and if plaintiff has not complied with these laws, the verdict must be for defendants.

3. "That this action being founded upon a premium note given for an insurance, for the making of which in this State the law imposed a penalty on the agent making the contract, the contract is against the policy of the law, even though not so expressly declared, and the note upon which this suit is brought is void, and the verdict must be for defendants.

4. "The 20th section of the Act of 22d March, 1849, of the State of Ohio, requires that there shall be a declaration in actions to recover assessments on premium notes by the plaintiff, and that the same shall set out that defendants are members of said insurance company, and that notice of the making of the assessment for the collection of which the suit is brought, was given thirty days before the commencement thereof. These requirements not having been complied with, plaintiffs are not entitled to recover, and the verdict must be for defendants."

To which points the court, GALBRAITH, P., gave the following negative answer:

"The court determine all the four several points in the negative. The burden of proof lies upon the defendant, after the note has been given in evidence. The note is presumed to have been legal and legally given, and the party alleging its illegality must show it, and not rely upon the plaintiffs not having shown all the requisites of the law to have been complied with."

Of which answer the plaintiffs in error here complain.

For plaintiffs in error, it was argued:

1. The note upon which this suit was brought is dated "Painesville, Ohio, September 16, 1850," but was made at Fairview, Erie county, Pennsylvania, at which time and place the policy of insurance was delivered, as proved by Mr. French, the agent of the company.

This is a matter explainable by parol. It was either "fraud, accident, or mistake," to date a note at Painesville, Ohio, which was actually made and delivered at Fairview, Pennsylvania, and in either case the fact may be proved by parol. That is a contract made in Pennsylvania, by a party having no right to contract in this State, and is attempted to be enforced in a Pennsylvania court. The parties being incompetent to contract, it is voidable, and can only be enforced by consent of the defendants.

The Act of 10th March, 1810, sec. 1, Purd. Dig. 447, provides that "no body politic or corporate of any foreign State, kingdom, or country, no company or copartnership of foreigners by themselves, or any agent or agents of such company or co-

[Thornton et al. *v.* The Western Reserve Farmers' Insurance Co.]

partnership," &c., " shall be insurers in any case within this State against loss at sea, against loss by fire upon any property within the same," &c.; "and all contracts and policies entered into by any such person or persons, company, copartnership, or body politic or corporate, as insurers, shall be *null and void.*" The 2d section of the same act punishes the agents by indictment, and imposes a penalty of $5000.

The 3d section imposes a penalty on the citizen for taking such insurance, of $500.

Is Ohio a foreign State, within the meaning of the Act of 1810 ? This was the question that arose in the case of *Buckner* v. *Finley and Van Lear*, 2 Pet. 586. Mr. Justice Washington, in delivering the opinion of the court in that case, says: " For all national purposes, embraced by the federal Constitution, the States and the citizens thereof are one, united under the same sovereign authority and governed by the same laws. In all other respects, the States are necessarily foreign to and independent of each other. Their constitutions and forms of government being, although republican, altogether different, as are their laws and institutions." This sentiment was expressed, with great force, by the president of the Court of Appeals of Virginia, in the case of *Warder* v. *Arrell*, 2 Wash. 298, when he states that, in cases of contracts, the laws of a foreign country, where the contract was made, must govern; and then adds as follows : " The same principle applies, though with no greater force, to the different States of America, for though they form a confederated government, yet the several States retain their individual sovereignties, and, with respect to their municipal regulations, are to each other foreign."

2. Pennsylvania has endeavored by stringent legislation to protect her citizens from imposition from foreigners and foreign corporations, and perhaps her most careful and restrictive enactments relate to insurance companies not chartered under and by virtue of her own laws. Two objects seem to have been constantly in view by the legislature from her earliest legislation upon that subject to the present time. The one before mentioned, and secondly the raising of revenue. She has carried this object so far as to require a tax of $100 upon each act of incorporation of an insurance company, in addition to which each company is compelled to pay a tax upon its stock. This system of taxation of her own corporations pervades her whole legislation; and this being so, it seems only reasonable that foreigners or foreign companies that come here to do their business, and carry away the money of our citizens, should contribute liberally to the expense of government; hence the legislature has placed certain restrictions upon foreign companies and foreign agents, and has pro-

perly required them to perform certain duties and pay certain moneys, before they do business in this State.

The Act of 13th April, 1827, P. L. 239, provides that the agent shall leave with the treasurer of the Commonwealth a true copy of the charter of the company for which he proposes to act, and a copy of the letter of attorney granted him by such corporation, before he shall make or receive any contract of insurance, or cause any to be made or renewed, and imposes on the agent a penalty of $500 for a violation of the provisions of this act.

By the Act of 23d April, 1829, Dunlop, 424, the agent of an insurance company chartered by any other State, must pay into the State treasury twenty per centum of all premiums, and make a report under oath to the auditor-general, on or before the first Monday of July of each year, and imposes a penalty of $1000 for offending against the provisions of this act.

Section 5, of the Act of 24th January, 1849, provides that insurance companies may insure in all cases, by complying with the terms and conditions of the 6th section, and provides that companies desirous of establishing such agency, shall pay to the treasurers of the respective counties fifteen dollars, except Philadelphia and Allegheny; and the county treasurer is thereupon authorized to issue a license to the company or its agent to transact the proper business for one year, and provides for renewing the license from year to year, at the same rate, as long as the agency shall be continued. It is not mentioned whether foreign or domestic companies are referred to. If domestic companies are intended, foreign companies certainly could expect no better terms.

Insurance companies may make contracts of insurance, if they do certain things; if they are first to comply, certainly they have no rights until these things are done.

 - These are the laws of Pennsylvania under which this contract of insurance was made, each and all imposing certain specific obligations upon the companies and agents, before they can make contracts of insurance in this State. These were for some purpose. Legislation cannot be treated as a mere mockery, an idle thing, or binding upon *us* only, and a trap to enable foreign corporations to catch our unsuspecting citizens. I apprehend that a foreign corporation has no right to contract with our citizens to do an act in Pennsylvania, without special authority from our own legislature. The Commonwealth has an interest in this. For a foreign insurance company to usurp this right to establish agencies here in violation of our laws, for the benefit of those who are not our citizens, without asking leave of our government, is something more than a mere insult.—"It touches the revenues of the Commonwealth as well as her pride; and it is no imputation upon the honor of a State in debt forty millions of dollars,

to say that she is willing to protect both the pockets and the feelings of her people. It is not a disgrace that she thinks of justice to her creditors, before she parts with her revenues to those who have no claims on anything but her courtesy." If they have no authority to contract, except in virtue of this legislation, it is for their express benefit; and we apprehend that no doctrine is better settled than that they must show a strict compliance with the law in every particular, before they will be allowed to share its benefits, or enforce their contracts made in pursuance of it. If foreigners seek an advantage, why not compel them strictly to comply with the conditions of our laws relative thereto? and if they are obliged to do certain things before they can make a valid contract, must they not show affirmatively on the trial that they have done them, before they can enforce it? It is easy for them to show an affirmative. They have only to produce the officers' certificates; and the negative could only be shown by the defendant at great trouble and expense. Would not a declaration that did not allege that all these provisions of the law had been complied with, be bad on demurrer? *Zack* v. *Pennsylvania Railroad Company*, 1 Casey, 396; *Smith* v. *Maffat*, 1 Barb. 65; *Young* v. *M'Kenzie*, 3 Kelly, 31; *Schuyler & Co.* v. *Mercer Co.*, 4 Gilm. 20.

The omission of the averment of performance of a condition precedent is fatal on demurrer. 2 Burr. 899; 2 Saund. 352, note 3. Whatever is necessary to be averred, certainly must be proved on the trial, to enable the party to recover; and the omission to aver and prove may both be taken advantage of on the trial, by a request to the court to charge on the point. *Omnia præsumuntur*, "does not apply in error to cure the very irregularity complained of, else it would vacate the principal functions of this court." *Lytle* v. *Colt*, 3 Casey, 194.

3. Upon this point the court is referred to the case of *Mitchell* v. *Smith*, 1 Bin. 110. This case was on a sealed note, given in payment for the purchase of a piece of land—part of the seventeen townships in Luzerne county, which had been granted to plaintiff by the Susquehanna company. The Act of 11th April, 1795, imposed a penalty for intruding, settling upon, or selling the lands, but did not declare the sales void, (just the case under consideration.) The court hold, that a penalty inflicted by law, upon the commission of an act, implies a prohibition, and, therefore, that the plaintiff could not recover. In this opinion the whole court concur. The doctrine is fully examined by Shippen, C. J., and Yates, J.

Holt, C. J., in Cathew, Rep. 252, states the principle fully, "that every *contract* made by, or about a matter or thing which is prohibited, and made unlawful by any statute, is a void contract, though the statute itself doth not mention that it shall be so, but

only inflicts a penalty on the offender; *because a penalty implies a prohibition, though there are no prohibitory words in the statute.*"  This is quoted and approved by Shippen, C. J.

An action founded upon a transaction prohibited by a statute, cannot be maintained, although a penalty is imposed for violating the law, and it is not expressly declared that the contract is void. *Seidenbender* v. *Charles' Administrators*, 4 S. & R. 157; *Biddis* v. *James*, 6 Bin. 329; *Barton* v. *Hughes*, 2 Brown, 48; *Hunt* v. *Knickerbocker*, 5 Johns. 328; *Columbia Bank and Bridge Co.* v. *Haldeman*, 7 W. & S. 233.

A contract for the purchase of goods, the importation of which is prohibited by law, is void.  *Condon* v. *Walker*, 1 Yeates, 483. It is a general rule of law, that all contracts or agreements, which have for their object anything which is repugnant to the general policy of the common law, or contrary to the provisions of any statute, are void.  1 Com. on Cont. 30.

Whenever a cause of action appears to arise from transgressions of a positive law of the country, the plaintiff has no right to be assisted.  *Holman* v. *Johnson*, Cowp. 343; *Belden* v. *Pitkin*, 2 Caines' Rep. 149; 4 Johns. 426; 5 Term R. 242, 599; 3 Id. 454; Cowp. 344.

A contract, made against the policy of the law, is equally void, as though made against its express provisions.  3 Term R. 23; 8 S. & R. 224; Pet. C. C. R. 417.

It may be alleged that this is an Ohio contract, and to be interpreted according to the laws of Ohio.  Suppose it was made in Ohio, (which was not the fact,) at least it was to be executed in Pennsylvania, where it was not only contrary to the policy of the law, but contrary to its express letter.  If a party make a contract, to be completed in a foreign country, and such contract is repugnant to the laws of that country, he is bound to take notice of them.  *Cambion* v. *Maffett*, 2 W. C. C. R. 98.

Is this a foreign or domestic contract?  The testimony shows positively that it is a domestic contract.  Defendants did not go to Ohio to make it.  Plaintiffs sent their agents here to solicit and make it, and it was made here, and it must be interpreted and governed by our laws.

Supposing it to be an Ohio contract, it is against the policy of our laws and injurious to our interests, except it be made in strict accordance with the laws of the Commonwealth.  This is an action to recover on the premium note.  The note grows out of a wrong inflicted upon us by foreigners, and they now have the assurance to come here and ask the aid of our courts, to enable them to take advantage of their own wrong.  *Quatenus nihil protestati aut juri alterius imperantis ejusque civium praejudicetur.*  Huberus, Lib. 1, tit. 3; De Conflict, Leg. § 2.  It is a maxim, that comity cannot prevail in cases where it violates the

[Thornton et al. *v.* The Western Reserve Farmers' Insurance Co.]

law of our own country, or the law of nature, or the law of God. " Contracts, which are in evasion or fraud of the laws of a country, are deemed nullities in every country affected by such considerations, although they may be valid by the laws of the place where they are made." Per Mr. Justice Best, in *Forbes* v. *Cochrane,* 2 Barn. & Cress. 448, 471.

But it may be alleged that plaintiffs had a right to make contracts of insurance in Pennsylvania, without complying with the conditions of the acts before referred to, under the Act of 19th February, 1849. Dunlap, 1017. That act provides, "that any mutual fire insurance company, chartered within any of the adjoining States, for the purpose of insuring detached buildings and their contents, whose capital is composed of moneys paid, and premium notes taken, at the time application shall be made for insurance, can or may have an agency or agencies, and can or may become insurers in any case whatever, except within the limits of any city, borough, or incorporated district within this Commonwealth, and the counties of Bucks, Lancaster, York, and Delaware, legitimately appertaining to their business, and not contrary to the laws of this Commonwealth: Provided, that every agent of such association or company, before transacting any business whatever for such company, shall file, in the office of the secretary of this Commonwealth, a duplicate copy of his appointment, under the common or corporate seal of such company; and, provided further, that every such association or company, shall publish their annual report, for three months in each year, in a newspaper published in Philadelphia, Harrisburg, or Pittsburgh," &c.

The Act of Ohio, of 22d March, 1849, by its first section incorporate plaintiffs, " for the purpose of insuring their respective buildings and personal property against loss or damage by fire," &c., not for the purpose of insuring " detached buildings and their contents."

Their act of incorporation was amended by act of the Ohio Legislature of Feb. 18, 1850, which by its first section provides, that plaintiffs " shall have authority, and hereby are authorized and empowered hereafter to insure all kinds of property," &c.

The note upon which this suit was brought was in September following:

The objections to the validity of the note upon which this suit is brought under our Act of 19th February, 1849, are the following:

1. Plaintiffs are not incorporated or chartered for insuring detached buildings and their contents, but to insure all kinds of property.

2. Plaintiffs had not complied with the laws of this Commonwealth then in force relative to insurance.

[Thornton et al. *v.* The Western Reserve Farmers' Insurance Co.]

3. The agent had not filed in the office of the Secretary of the Commonwealth, a duplicate copy of his appointment, under the common or corporate seal of the company.

4. The company never published its annual report, as required in this State.

The 20th section of the Act 22d March, 1849, of Ohio, incorporating plaintiffs is as follows:

" If said company shall elect to sue only for the amount assessed as aforesaid, it shall be necessary in declaring, to set forth only that the defendant or defendants is a member or members of said company, the deposit note .of such defendant or defendants, and from such liability raising a promise to pay, and also to set forth that notice of the assessment or assessments have been given as herein provided, thirty days before the suit was commenced."

The statement filed is deficient in the following requisites required by the organic law of the company before referred to:

1. It is not a declaration.

2. It does not set forth that defendants are members of the company.

3. It does not raise a promise on the part of the defendants to pay the assessments.

4. It does not set forth that notices of the assessments were given in the manner provided in the act of incorporation, thirty days before suit was commenced, nor at any other time.

*Galbraith,* for defendants in error.

The Act of Assembly passed March 10, 1810, which it is contended, rendered the note on which this suit was brought, void, was evidently intended against corporations, partnerships and individuals of foreign countries, and not against those of the neighboring States of the confederacy; the word *foreign* and *foreigners* being used in their ordinary and popular sense. There is, I believe, no case to be found in which the construction now claimed has been placed upon that act. But even if this were as contended, the act has been long since impliedly repealed by the Act of April 13, 1827, P. L. 239, the later Act of April 23, 1829, Dunlop, 427, the Act of January 24, 1849, and that of February 9, 1849, in all of which the rights of such companies are recognized, and various regulations for their agents are prescribed. If the old Act of 1810, was meant to apply to insurance companies of other States, and still in force, and their contracts therefore null and void, then the acts just referred to are senseless and nugatory. It is omitted in the later editions of Dunlop's Digest of Pennsylvania Statutes.

The Act of 1829, section 1, provides " That any person or persons within this State, who shall act as an agent or agents for any

[Thornton et al. *v*. The Western Reserve Farmers' Insurance Co.]

individuals or associations of individuals, not incorporated and authorized by the laws of this State, to effect insurances against losses by sea in the nature of marine risks, &c., shall pay to the State Treasurer yearly, and every year the sum of twenty dollars, upon every sum of one hundred dollars, upon the amount of all premiums received by such agent, &c." This act recognizes the validity of the contracts made by the insurance companies of other States doing business here; but punishes with heavy penalties the agent guilty of omitting certain formalities therein mentioned. The later Acts of January 24, 1849, and February 9, 1849, permit such contracts upon certain conditions. Taking these last named acts as being strongest against the defendants in error, and leaving out of view that of 1829, and which has not been repealed, is there anywhere a prohibition against companies chartered by other States issuing policies of insurance within this Commonwealth? It is said that there are penalties provided, and that a penalty implies a prohibition. But the difficulty in the way of this argument is, that the penalty is not for the making of the contract of insurance, but against the agents for the neglect to comply with the regulations prescribed for them. If these acts or any of them provided a penalty for the making of insurances by such companies within this State, then the rule in the case of *Mitchell* v. *Smith*, 1 Binney, 110, might be applicable. In that case a contract was sought to be enforced against the making of which a penalty had been enacted, and it was held that although there was no express prohibition, yet that the penalty implied a prohibition. There is a broad and obvious distinction between that case and this one, which must be at once apparent.

But it is further contended that the plaintiffs below ought to have set out in their statement, and proved on the trial, that they had previously to taking the note in question, complied with numerous regulations prescribed in the several acts of assembly before referred to; and authorities are cited to establish the position that, where there is a condition precedent, the party seeking to enforce it, must allege and prove that it has been performed. The principle is not denied, but how far is it applicable to this case? Certainly no further than to require of the plaintiff proof of the assessments and notice. The suit, it must be remembered, is upon the note, which is the contract sought to be enforced, and to which alone reference must be had in determining the allegations necessary to be made and proved, to entitle the company to recover.

The presumption is that the officers of the corporation have complied with the laws, and the note, and assessments and notice having been proved, the plaintiffs were not bound to go any further, but the burthen of proof rested upon the defendants, who

could then show by way of defence, such acts of omission or commission on part of the plaintiffs as might defeat their recovery.

Our act of assembly authorizes a statement instead of a declaration, and the Ohio law referred to will not, I apprehend, interfere with that right. That section of the Ohio act is, besides, merely directory, and a substantial compliance with its provisions would be sufficient. The pleading must be governed by our own rules and practice, and not by the rules and practice of Ohio. Any other course would produce endless confusion.

The nicety and precision of a declaration is not required in a statement, and the plaintiff is only required to specify "the date of the promise, book account, penal or single bill, and the whole amount that he may believe is justly due." *Boyd* v. *Gordon*, 6 S. & R. 53 ; *Riddle et al.* v. *Stevens*, Ib. 537.

It was not necessary nor indispensable for the plaintiffs to set out in their statement a compliance with the several regulations of the acts relating to insurance companies, even should such compliance be regarded as condition precedent to their right to sue upon the note. *Snavely* v. *Jones*, 9 Watts, 433, per Gibson, C. J. "In regard to the condition of the transfer, it is enough that nothing is indispensable to a statement, which has not been made so by the statute, which has substituted it for a declaration, and that requires no more to be specified than the date of the contract, and the amount supposed to be due by it. The terms must, doubtless, be set forth in an intelligible manner, for it would not else appear that there is an available cause of action, but performance of conditions precedent, and everything beyond the defendants' engagement to pay may be omitted."

The defendants, having accepted a statement, and proceeded to issue upon it, the court will not reverse the judgment for want of a declaration. *Allen* v. *Irvin*, 1 S. & R. 555.

In the recent case of *Bernier* v. *Beauchemin*, decided in the Supreme Court of Lower Canada, at Montreal, it was held, that in an action for an infringement of a patent right, it was not necessary to set out the formalities required to be observed, in order to obtain a patent. Legal Journal, 90.

The opinion of the court was delivered November, 1858, by

LOWRIE, C. J.—It does not seem to us that the Act of 10th March, 1810, relative to foreign insurance companies, applies to companies of other States of the Union; but the Act of 13th April, 1827, covers the omitted ground. Yet we do not see that even it applies to this case ; for it relates to agents for making and renewing contracts of insurance, and this agent was only for receiving applications. Besides, it does not forbid insurances of this kind, but merely imposes certain public duties on the agents. And the Act of 23d April, 1849, does not forbid the contract,

but only imposes a tax on the premiums received, and provides for its collection. The Act of 24th January, 1849, seems to us to apply to branch or agency offices, or places of business, established in this State by companies of other States, and not to mere transient or travelling. agents, to invite applications to be sent to the company itself—which seems to be the only agency proved here. Thornton sent to the company in Ohio, by the agent, his application with his premium note, as his proposal for a policy, and the company accepted it by sending him the policy. For these reasons we must declare that this contract is not forbidden by our law.

The *statement* filed as a substitute for a declaration, does not appear to be inadequate. It was not necessary to follow the form of remedy prescribed by the Ohio statute. Our own forms of remedy are the only proper ones, for in this matter the *lex fori* governs. The party was entitled by the charter to thirty days' notice before suit brought, and if this was not given, it furnished ground of abatement of the action, and ought to have been so pleaded. In accurate pleading, this could not support the plea of *non assumpsit* without barring the right. We think that the case was correctly tried.

Judgment affirmed.